UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SANDRA WALKER, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>RALPH NICHOLS, et al., )<br>)<br>    Defendants ) | 1:13-cv-00259-GZS |

**RECOMMENDED DECISION**
**RE:  MOTION TO DISMISS (ECF NO. 28)**

Sandra Walker, as personal representative of the Estate of Shaun Corson, has filed suit against the State of Maine and various individuals in connection with Corson's July 23, 2011, suicide at the Maine State Prison.  The State of Maine, Ralph Nichols, Patricia Barnhart, Scott Burnheimer, and Joseph Ponte have moved to dismiss so much of the complaint as alleges liability against the State of Maine or the individual defendants in policymaking, administrative, or supervisory capacities.  I now recommend that the Court grant the pending motion to dismiss and give plaintiff's counsel a period of sixty days to file an amended complaint that names the John Doe defendants described in Counts I and II of the complaint and sets forth in detail the factual predicates upon which Walker bases her claims against those individual defendants.

**Complaint Allegations**

The six-count complaint as currently drafted is sparse on factual details, largely consisting of conclusory legal terminology.  However, the complaint is clearly a civil rights action for money damages. (Compl. ¶ 1.)  Sandra Walker, the personal representative of Shaun Corson's estate, was his mother.  (Id. ¶ 4.)  Nichols, the Director of Operations of the Maine Department of Corrections; Ponte, the Commissioner of the Department of Corrections;

Burnheimer, the Superintendent of the Maine Correctional Center; and Barnhart, the former Warden of the Maine State Prison, are all sued in their individual and official capacities.  (Id. ¶¶ 5, 9-11.)  Additional named defendants include the Maine Department of Corrections; the Maine State Prison, a facility in Warren, Maine; and the Maine Correctional Center, a facility in Windham, Maine.  (Id. ¶¶ 6-8.)

Shaun Corson was taken into custody by the Somerset County Sheriff's Department on July 7, 2011.  (Id. ¶ 13.)  On July 8, 2011, he was ordered to serve the time remaining on a suspended sentence stemming from a 2002 arson.  (Id. ¶ 14.)  Corson has a history of attempted suicide and mental disease.  (Id. ¶¶ 15-16.)  He was emotionally distraught between July 18, 2011, and his death and was at risk of suicide during that time frame.  (Id. ¶¶ 17-18.)  At least part of his emotional distress arose from the fact that he knew he faced extradition from Maine to Florida in connection with homicide charges arising from his girlfriend's death.  Corson knew that the State of Florida had a death penalty provision which he feared and he also feared incarceration in Florida.  (Id. ¶¶ 19-25.)

Between July 8, 2011, and July 18, 2011, Corson remained in the custody of the Somerset County Sheriff's Department on suicide precautions.  (Id. ¶ 26.)  On July 18, 2011, he was transferred from the Somerset County Jail to the Maine Correctional Center in Windham, Maine, where he remained until July 21, 2011.  (Id. ¶¶ 27-28.)  During his time in Windham, Corson was on suicide precautions.  (Id. ¶ 29.)  On July 21, 2011, employees of the Maine Department of Corrections transported Corson from Windham to the Maine State Prison.  (Id. ¶ 30.)  When he arrived at the Maine State Prison, Corson was removed from suicide precautions.[1]

---

[1] As alleged: "The decedent, Shaun Corson, was removed from suicide precautions by the Maine Department of Corrections when transferred from the Maine Correctional Center to the Maine State Prison." (Compl. ¶ 32.)

2

(Id. ¶ 32.) He remained at the Maine State Prison from July 21, 2011, to July 23, 2011, when he died from asphyxiation, an apparent suicide. (Id. ¶¶ 31, 33-34.)

Count I of the complaint is directed at the State of Maine and the four named defendants who have filed the present motion to dismiss as well as other unnamed John Doe supervisory personnel. The count does not add any factual predicates regarding Corson's death, but it does assert that these defendants were responsible for establishing and implementing appropriate standards, policies, procedures, customs and practices designed to provide constitutionally adequate communication of a substantial risk of suicide of an inmate being transferred from one facility to another and other suicide prevention measures for mentally ill and suicidal prisoners. (Id. ¶¶ 35-54.) By comparison, Count II of the complaint is directed at John Doe non-policy making/non-administrative/non-supervisory defendants. (Id. ¶¶ 55-74.) These John Doe defendants are alleged to have been deliberately indifferent to a serious risk of harm in various ways, including by failing to communicate with others at the time of transport, placing the prisoner in a cell that was not equipped to prevent suicide, failing to remove bedding from Corson's cell, failing to observe Corson with the necessary frequency, failing to use protective restraints, and failing to adhere to sound suicide prevention measures. Count III of the complaint is brought pursuant to the Maine Tort Claims Act and alleges that the defendants, collectively, negligently caused Corson's death by failing to provide suicide prevention and/or precautions in accordance with Department standards, failing to place Corson on suicide watch, failing to place him in a suicide prevention cell, failing to remove furniture and bedding from the cell, failing to place him in a suicide smock, failing to remove his possessions, and failing to provide a timely mental health referral. (Id. ¶¶ 75-83.) Counts IV, V, and VI are wrongful death, conscious pain

and suffering, and punitive damages claims and do not provide any further factual predicates or identification of potential defendants.  (Id. ¶¶ 84-92.)

## Legal Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought."  Id. R. 8(a).  To decide a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face."  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678).  A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement.  Fed. R. Civ. P. 8(a).  However, the allegations must be sufficient not only to identify the way in which the defendant was harmed, but also to support a reasonable inference that the defendant bears liability for the harm.  Iqbal, 556 U.S. at 678.  Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice.  Iqbal, 556 U.S. at 678; see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. To survive a motion to dismiss plaintiff must allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. Mere knowledge of a subordinate's wrongful conduct does not establish 42 U.S.C. § 1983 liability for a supervisor. Rather, there must be an affirmative link alleged between the conduct of the supervisor and the constitutional deprivation experienced by plaintiff. See Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011) ("The only allegations in the complaint linking [the supervisor] with the [constitutional violation] are that [the supervisor] 'was the officer in charge during the incident' and that he 'participated in or directed the constitutional violations alleged herein, or knew of the violation[s] and failed to act to prevent them.' Iqbal and our precedents applying it make clear that these claims necessarily fail."); see also Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533-34 (1st Cir. 2011); Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009); Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).

## Discussion

To the extent the complaint names as separate defendants the State of Maine or one of its agencies, the Maine Department of Corrections[2], and seeks monetary damages from the defendant, it fails to state a claim because such claims run afoul of the State's sovereign immunity. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 384 (1998); Will v. Mich. Dep't of State Police, 491 U.S. 58, 67-70 (1989); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99-100 (1984). See also Poirier

---

[2] The plaintiff has also named as defendants two state correctional facilities, the Maine State Prison and the Maine Correctional Center. To the extent those brick and mortar facilities have a separate legal identity, they are subsumed under the Maine Department of Corrections and are thus an "agency" of the State of Maine. Nillson-Borrill v. Burnheimer, 505 F. Supp. 2d 180, 181-182, (D. Me. 2007) (dismissing official capacity claims against superintendent of MCC and noting "[i]t cannot seriously be maintained that MCC is not a state institution").

v. Mass. Dept. of Corrections, 558 F.3d 92, 97 & n. 6 (1st Cir. 2009) (observing that states and their agencies are entitled to immunity regardless of relief sought).  In Will v. Michigan Department of State Police, the Supreme Court held that neither a state nor its agencies may be sued in any court, federal or state, for a violation of 42 U.S.C. § 1983 because neither the state nor its agencies is a "person" within the meaning of that statute.  491 U.S. at 64, 70.  In addition, absent waiver by a state or abrogation of immunity by Congress pursuant to its power under the Fourteenth Amendment, the Eleventh Amendment prevents a state and its agencies from being sued in federal court on any claim, whether based in federal or state law, and regardless of the kind of relief sought.  Id. at 65-66, 70.

This immunity also applies to agency officials sued in their official capacities.  Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002).  Claims for money damages against state officers in their official capacity are barred by the Eleventh Amendment.  Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (citation omitted); see also Kentucky v. Graham, 473 U.S. at 165-67 & n.14 (1985).  These basic principles of sovereign immunity and section 1983 pleading standards dispose of the claims against the four officials of the Maine Department of Corrections in their official capacities, the Department of Corrections itself, and the two correctional facilities (Maine State Prison and Maine Correctional Center) operated by the Department, which are probably not separate legal entities in any event.  See 34-A M.R.S. § 3201-A (establishing the Maine State Prison), § 3401 (establishing the Maine Correctional Center).

What remains for discussion are supervisory liability claims against Burnheimer, Barnhart, Nichols, and Ponte in their individual capacities.  The fact that Corson was able to commit suicide in the prison does not make out a prima facie constitutional violation.  The constitutional protection that plaintiff asserts was infringed is the prohibition against cruel and unusual punishment, whether framed as an Eighth Amendment violation for a convicted prisoner or a Fourteenth Amendment violation for a pretrial detainee.  (Pl.'s Response to Motion to Dismiss at 2, 4 n.1.)  In cases such as this the inquiry is whether the defendants were deliberately indifferent to a serious risk of harm (in this case manifested by Corson's mental health history and attendant physical safety concerns).

Farmer v. Brennan frames the deliberate indifference inquiry.  In Farmer the Court prescribed two necessary standards for holding a prison official liable under the Eighth Amendment.  "First, the deprivation alleged must be, objectively 'sufficiently serious.'"  511 U.S. 825, 834 (1973) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the defendant must have a culpable state of mind, which means in prison conditions cases that the defendant was deliberately indifferent to the inmate's health or safety.  Id.  It has been said that deliberate indifference requires "the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain . . . or actual knowledge [or wilful blindness] of impending harm, easily preventable."  DeRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (citations omitted).  It has also been said that the concept of deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable," Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).  The first prong of this analysis is readily satisfied; the deprivation pled, loss of life, is a risk of serious harm by any standard.  The issue presented by this motion to

dismiss is whether the plaintiff has pled sufficient facts to support a plausible inference that the four named defendants have supervisory liability under the second prong of the Farmer analysis. As indicated above, supervisory liability involves more than being the officer in charge at the time of incident. There must be an affirmative link between the supervisor and the alleged constitutional deprivation. Examples of affirmative links include "supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference" in relation to the deprivation. Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)).

The complaint alleges that Ponte and Nichols are Department of Corrections policymakers "with regard to adherence to detention and correctional standards" and that they are responsible "at the policymaking and administrative level" for care and management of prisoners. (Compl. ¶¶ 37-38.) Barnhart and Burnheimer were responsible at the "administrative and supervisory level" for the care and management of prisoners at their respective institutions, including communication of a substantial risk of suicide of any inmate being transported from one facility to the other. (Id. ¶¶ 44-45.) Walker explains in her response to the motion that she believes that her complaint is based on the notion that these defendants did not have the proper rules in place to protect an inmate from a known risk of self-injury and/or suicide, or did not enforce any such rules, and that their actions were the cause and moving force behind removing Corson from suicide precautions. (Pl.'s Response to Motion to Dismiss at 7-8.) The problem with this theory is that there are no *facts* pled from which the inference could be drawn.

The only pertinent factual allegation in the complaint is that the decedent "was removed from suicide precautions by the Maine Department of Corrections when transferred from the Maine Correctional Center to the Maine State Prison." (Compl. ¶ 32.) Under the factual

8

allegations as set forth in the complaint, the most plausible inference to draw is that the Department of Corrections does have policies in place dealing with suicide prevention, including communicating known risks concerning transferred prisoners, removing bedding from cells, and placing inmates on suicide watch, but that one or more correctional officers did not apply those policies in Corson's case, either from negligence or criminal recklessness such as would rise to the level of deliberate indifference.  In any event there are no facts pled that would plausibly lead to the conclusion that any one of these four defendants was the cause and moving force behind a failure of policy and procedure.

     The four supervisory defendants are also sued under the Maine Tort Claims Act, 14 M.R.S. §§ 8101 et. seq.  That Act provides absolute immunity for government employees for claims arising out of their performance of discretionary functions.  14 M.R.S. § 8104-B(3).  The Maine Law Court has determined that the management of prisoners in a state prison is a discretionary function.  Roberts v. State, 1999 ME 89, ¶ 9, 731 A. 2d 855, 858.  The complaint's allegations base plaintiff's theory of liability as to the four named defendants on their actions as policymakers and administrators.  Their decision making regarding policy and procedure are clearly discretionary functions and do not involve the performance of anything approaching a ministerial act.  Their immunity from Maine tort liability is absolute and the case that plaintiff appends to her response to the motion to dismiss fully supports that position.  See Penn v. Knox County, No. 2:11-cv-00363-NT, 2013 WL 5503671, at *28, 2013 U.S. Dist. Lexis 141326, at *84-86 (D. Me. Sept. 30, 2013) (Order on Motion for Summary Judgment at 59-61, ECF No. 108).

**Conclusion**

Based upon the foregoing analysis I recommend that the Court grant defendants' motion to dismiss and dismiss all counts of the complaint to the extent the counts are brought against the moving defendants. Plaintiff should be allowed a reasonable time to identify her John Doe defendants and amend her complaint by including identities and specific factual predicates upon which she would base a theory of liability as to any "John Doe" defendant.[3]

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 22, 2013                    /s/ Margaret J. Kravchuk
                                    U.S. Magistrate Judge

---

[3] For instance, if discovery reveals that James Jones transported Corson without incident from the Maine Correctional Center to the Maine State Prison and that no one gave him any information about Corson's background or suicidal tendencies, and there is no evidence that anything out of the ordinary happened during the transport, it is hard to conceive of a theory of deliberate indifference liability as to Jones. If, on the other hand, Sam Smith knew of Corson's background, knew he was on suicide prevention measures at Maine Correctional Center, and deliberately failed to take appropriate precautions at the Maine State Prison, perhaps plaintiff will be able to plead a theory of liability as to Smith. My point is that the salient facts of a named defendant's role in the constitutional deprivation must be pled under the Iqbal pleading standard. Reports concerning the circumstances of Corson's incarceration and death should be readily available to the decedent's legal representative, even without the mechanisms of formal discovery, but if such reports have not been provided, plaintiff can obtain that information through discovery.